## 39011. BAKER v. THE STATE.

CLARKE, Justice.

Richard Lamar Baker was indicted, tried and convicted in Brooks County for the murder of his father, James Baker, and of concealing a death. He was sentenced to life in prison plus twelve months consecutive.

Investigation in the case began on the morning of July 13, 1981, when James Baker, the victim, failed to report to work. Co-workers became concerned when they were unable to reach him by telephone and drove to the victim's house. The house was open, the car was there and the victim was not at home. His friends then proceeded to the victim's farm a few miles down the road. There they observed fresh tire tracks going through a field into a wooded area. A mound of fresh dirt was discovered and the authorities were called.

Personnel from the Brooks County Sheriff's Department arrived and while they were initially observing the scene the

appellant, Richard Baker, drove up. The appellant started to drive away but stopped when hailed by the officers. There was grass and dirt under the rear fenders of the car and blood on the back of the car. Appellant was described as "acting strange," hyperventilating and grinding his teeth. He was taken into custody.

The body of James Baker was found in the shallow grave. There were some lacerations on his face; the cause of death was a gunshot wound to the back of the head. Testimony revealed that the gun was 18 inches to two feet from the point of entry when the shot was fired.

Miranda warnings were given to the appellant and hand swabbings were taken. Traces of metals characteristic of gunshot residue were found. Blood samples taken from the back of the appellant's car and the inside of the trunk matched that of the victim. The appellant did not testify at trial. Two psychiatrists testified for the defense. In rebuttal the state offered two lay witnesses in whose opinion the appellant knew the difference between right and wrong.

Immediately prior to the trial of the case counsel for appellant filed a special plea of incompetency and requested a jury trial on their client's competency to stand trial pursuant to Code Ann. § 27-1502. The special plea was dismissed by the trial court on the ground that it was a special plea in bar and the filing was not timely.

1. The appellant contends that the court erred in failing to conduct a hearing prior to trial on the issue of competency when the issue was properly raised prior to the trial of the case. He further contends that when evidence was presented during the trial of the case that he was not competent, the trial court had a duty to make further inquiry on the issue.

In dismissing the special plea of incompetency the trial court relied on a local rule of court which requires that all motions, special pleas, and matters in abatement be filed at or before arraignment and on the fact that he had spoken with defense counsel on the phone the week prior to trial and that counsel agreed that the case would proceed to trial on November 9, 1981.

Appellant was indicted in October of 1981. His arraignment was held on October 12, 1981, at which time he entered a plea of not guilty. Various motions were filed after that time and allowed. On October 27, 1981, a hearing was held on a motion to suppress evidence. Appellant did testify at this hearing on the issue of his residence which is not at issue on this appeal.

At this hearing counsel for the defense stated that they anticipated no more motions except that due to the mental state of their client it was felt that psychological evaluation was warranted. It was understood that counsel was going to schedule psychiatric evaluations of the appellant. The trial court stated that any issue as

to insanity was covered by the plea of not guilty.

On the morning of Monday, November 9, 1982, prior to the call of the case for trial a special plea of incompetency was filed and the court was notified of the plea. In connection with the plea a letter from Dr. Robert Wray, a psychiatrist who had examined the appellant on Friday, November 6, 1981, was filed. In his written report to defense counsel the doctor stated that in his opinion the appellant was psychotic and unable to understand the proceedings and was not capable of assisting his defense counsel in defending his case. Defense counsel stated that during the conversation with the judge the week before, the psychiatric reports had not been received, and that the special plea of incompetency was filed at the earliest opportunity. Counsel stated the defense was prepared at that time to try the incompetency issue and if found competent was prepared for immediate trial on the murder charge.

We agree that the court erred in dismissing the special plea without making further inquiry into the competency of Mr. Baker to stand trial. Although the issue of sanity at the time of the commission of the crime was tried and submitted to jury under the not guilty plea, the issue of an accused's competency to stand trial is a totally different inquiry as to mental state at the time of trial, guilt or innocence and insanity at the time of the criminal act are irrelevant to a determination of competency. *Crawford v. State,* 240 Ga. 321 (240 SE2d 824) (1977).

Under Georgia law "Whenever a plea is filed that a defendant in a criminal case is mentally incompetent to stand trial, it shall be the duty of the court to cause the issue of the defendant's mental competency to stand trial to be first tried by a special jury." Code Ann. § 27-1502 (a). We have held that the issue to be tried "is not, whether the defendant can distinguish between right and wrong, but is, whether he is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." *Brown v. State,* 215 Ga. 784, 787 (113 SE2d 618) (1960); *Crawford v. State,* 240 Ga. 321, 326 (240 SE2d 824) (1977). The proceeding is civil in nature and the defendant is required to show incompetency by a preponderance of the evidence. *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977).

If a special plea is not filed then the court is not bound by the procedures set forth in Code Ann. § 27-1502. See *Ricks v. State,* 240 Ga. 853 (242 SE2d 604) (1978). However, in addition to the common law and statutory rights of a defendant not to be tried while

incompetent, the accused also has a constitutional right to not be put on trial while incompetent and procedural due process requires the trial court to afford the accused an adequate hearing on the issue of competency. Pate v. Robinson, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966). The court held in Pate that even though defense counsel did not follow statutory procedures for requesting a special jury on competency, when evidence was presented indicating incompetency during the trial, there was a duty on the trial judge to inquire into the issue of competency and hold a hearing on the issue.

In Drope v. Missouri, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975), counsel for Drope had submitted a letter from a psychiatrist suggesting mental problems of his client prior to trial and requested time for further psychological examination. The trial court found the request not in proper form and ordered the case to trial. The United States Supreme Court rejected the state's argument that the accused had waived his right to a hearing on competency. Although not in proper form, the information raised a doubt as to competency.

In Chenault v. Stynchcombe, 546 F2d 1191 (5th Cir. 1977), the defendant contended a new trial was required because the court did not impanel a special jury pursuant to Code Ann. § 27-1502. The defense at trial was insanity at the time of the offense; no special plea was ever filed. Prior to trial the court appointed two psychiatrists to examine the defendant and they found him to be competent. On federal habeas corpus the court found no constitutional violation since there was no evidence presented at trial to raise a doubt as to defendant's competency at the time of trial. The question on review is "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense?" Lokos v. Capps, 625 F2d 1258, 1261 (5th Cir. 1980).

The constitutional guarantees require the trial court to inquire into competency, even where state procedures for raising competency are not followed, if evidence of incompetence comes to the court's attention. In the present case the appellant requested a hearing on his competence prior to trial (and offered a psychiatric report in support of the special plea). The district attorney contends that this must be done at arraignment or be deemed waived.

In addition to the statute, the trial court has the inherent authority and duty to question competency before or during the trial and "if at any time while criminal proceedings are pending, the court observes facts which raise doubt as to the sanity of the accused, or such facts are brought to its attention by counsel, the question of his

sanity should be settled before further steps are taken." *Lingo v. State,* 224 Ga. 333, 341 (162 SE2d 1) (1968).

The constitutional requirements of Pate and Drope continue throughout the criminal proceedings both prior to and during the trial of the main case itself. Thus while the statutory right to a special jury under Code Ann. § 27-1502 could be waived, the actual issue of present incompetence must be addressed if there is evidence of incompetence which manifests itself during the proceedings.

Code Ann. § 27-1502 does not state when a special plea of incompetency must be filed. In *Standridge v. State,* 158 Ga. App. 482 (280 SE2d 850) (1981), the special plea was not filed until the state had rested its case. The trial court allowed a special hearing as to competency at the close of the case with the jury which tried the case in chief first deliberating on the issue of competency. The court found no error in not empanelling a separate jury due to the late filing of the plea. In *Cronch v. State,* 141 Ga. App. 851 (235 SE2d 40) (1977), the court held that the failure to hold a separate trial under Code Ann. § 27-1502 when a special plea was filed rendered the trial as to guilt "nugatory." In *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981), the defense did not file a special plea until after a not guilty plea was entered to the indictment. We held the defendant could not complain that he pled to the indictment while possibly incompetent.

While there may be circumstances in which a special plea under Code Ann. § 27-1502 is untimely, we cannot find that to be the case here. The arraignment and plea of not guilty occurred on October 12, 1981. At a motions hearing on October 27, 1981, defense counsel expressed concern over the client's mental condition and informed the court that psychiatric exams were being scheduled. These evaluations took place the following week on November 2 and November 6. The weekend prior to trial counsel received the opinion of the psychiatrist that their client was incompetent. The Monday of trial, November 9, 1981, counsel for defense filed the plea and offered evidence in support of a hearing on competency. No continuance or delay was requested as the defense was prepared to immediately go forward with the competency trial and the trial on the murder charge if found competent.

The state contends that even if it were error to dismiss the plea without a hearing there is sufficient evidence in the record to support a finding of competency. The Attorney General concedes that if a meritorious plea were made at any time during the proceedings it would not be dilatory, but contends that the evidence shows appellant was competent. *Smalls v. State,* 153 Ga. App. 254 (265 SE2d 83) (1980), is relied upon in support of this argument. However, in *Smalls* there was no special plea filed prior to trial, but counsel and

the court agreed that if the defendant were convicted, psychiatric evaluation would be conducted and if found incompetent a new trial would be granted. The evaluations were conducted and the report was inconclusive on competence at trial. The court denied the motion for new trial, finding the defendant was competent. The Court of Appeals found evidence to support the finding of competency, noting that the transcript indicated that the defendant testified coherently at trial and there was no evidence offered by the defense that he was not competent.

In this case Baker did not testify at trial and the only expert evidence states that he was incompetent based upon evaluations conducted the week before trial. The state argues the evidence supports a finding of competency based upon the appellant's testimony at a motion to suppress hearing conducted on October 27, two weeks prior to trial. While the demeanor of the appellant at this hearing could be relevant in a hearing on incompetency, at the time of trial we must point out that no hearing was held and no finding as to competency was made below. Furthermore, the only evidence presented at the time of the trial itself was that he was in fact not competent. During the defense phase of the trial two psychiatric witnesses who testified as to insanity at the time of the offense also testified that based upon their evaluations the week before trial they believed the appellant to be unable to rationally understand the proceedings or to assist in his own defense. The state's rebuttal witnesses testified that they believed the appellant knew the difference between right and wrong; this evidence went to the issue of insanity as a defense to the crime and not to the issue of mental competence.

The procedural due process requirements of Pate v. Robinson were not met. Based upon the series of events in this case we also hold that the special plea of incompetency which was supported by documentary evidence was not dilatory and the court erred in failing to follow Code Ann. § 27-1502 which places an affirmative duty on the trial judge whenever a plea is filed.

We now turn to the issue of a remedy when a Pate violation or an error under Georgia law occurs. In Pate and Drope the court ordered that the petitioners be released subject to the right of the state to retry if first found competent under proper procedures. In those cases the court found that the passage of several years since trial made it virtually impossible to make a determination of competency at the time of the original trial. The Fifth Circuit has held in collateral federal attacks that if a Pate violation existed at trial the habeas court may hold a hearing to make a nunc pro tunc determination of competency at the original trial. Lokos v. Capps, 625 F2d 1258, supra;

Acosta v. Turner, 666 F2d 949 (5th Cir. 1982); Martin v. Estelle, 583 F2d 1373 (5th Cir. 1978). In this retrospective procedure the burden is initially on the state to show that there is evidence available to determine competency. If the court is convinced that an effective hearing is possible, the burden is on the defendant to show incompetency by a preponderance of the evidence. See Lokos v. Capps, supra.

In *Cronch,* supra, our Court of Appeals held that a failure to follow Code Ann. § 27-1502 when a special plea was filed required that the verdict of guilty be set aside. In *Crawford,* supra, we held that since there was reversible error in the trial of the special plea, the verdict in the main case must also be set aside. However, in both of these cases there was also error in the guilt-innocence trial. The accumulation of errors was such that a new trial was demanded and granted.

We find no meritorious claim of error in the trial itself. See Division 2, infra. Here the only error is the failure to provide a hearing on the issue of competence to stand trial. This is not such an error as demands a new trial on the question of guilt or innocence, but does rather demand that the case be remanded for a determination of the appellant's competence at the time of his trial by holding a post-conviction hearing. See *Smalls,* supra.

Upon remand the burden first falls upon the state to show there is sufficient evidence to make a meaningful determination of competency at the time of trial. If the court rules that a determination of appellant's competency at the time of his trial is not presently possible, then a new trial must be granted. If the court decides such a determination is possible, the issue of competency to stand trial must be tried and the appellant shall have the burden to show incompetency by a preponderance of the evidence. The sole issue to be presented to the jury is that of mental competency; evidence as to guilt would be irrelevant. *Crawford,* supra. If the jury finds that the appellant was not mentally competent at the time of his trial, the verdict in the main case must be set aside. On the other hand, if the appellant fails by a preponderance of the evidence to prove incompetence at the time of his trial, the verdict of guilty shall stand.

In the event the verdict of guilty is set aside and a new trial ordered as to guilt and innocence, the appellant may again raise the issue of competency by special plea pursuant to Code Ann. § 27-1502.

The case is remanded with direction that the trial court conduct a hearing to determine the above issues. Upon completion of the proceedings on remand, the judgment may be subject to a right of appeal from the rulings and findings then made.

2. In his remaining enumeration of error the appellant contends the court erred in overruling his motion to dismiss the indictment on the grounds that the state had failed to preserve certain critical scientific evidence which made it impossible for the defense to make an independent analysis of the evidence. The evidence in question consists of three separate scrapings of blood. On October 13, 1981, the defense filed a motion to allow independent examination of the blood samples which the court granted. When the expert hired by the appellant contacted the state crime lab it was learned that two of the three samples had been used up in testing and that the other sample could be tested but due to the length of time in the lab certain chemical changes had occurred which would make a complete duplication of the crime lab testing impossible.

At a pre-trial hearing John Wegel, a forensic serologist with the State Crime Lab, was called as the only witness. He testified that he ran electrophoretic isoenzyme tests on the blood scrapings from the trunk of appellant's car and from the victim's house. He compared these results with blood samples of the victim and the appellant. The tests showed that the blood was not that of the appellant. The tests did show that the scrapings matched the victim's blood. He stated that the trunk blood which matched the victim's blood also matched approximately 1.4% of the general population.

Mr. Wegel testified that he used standard serologist techniques and followed the standard procedures of the State Crime Lab. He stated that when small scrapings or amounts of blood are tested the standard test may require a using up of the samples themselves. If all of the unused samples had been frozen the enzyme deterioration in the blood might have been slowed so that Wegel's test could be duplicated. In its present state the available blood could be tested to show that it could be the victim's blood and would exclude the appellant's blood.

The appellant contends that because he was unable to duplicate the blood test in an independent analysis and the blood samples were critical circumstantial evidence linking his car to the crime, the admission of the results of the blood tests was error under *Sabel v. State,* 248 Ga. 10 (282 SE2d 61) (1981). We find no error. The appellant was granted an opportunity to inspect and test all evidence samples which were available. There was no negligence in the crime lab procedures. There was evidence that the lab does not have the facilities to freeze all blood samples. At the time the request for inspection was made the available sample had already deteriorated to some extent. There was no showing that a separate test would produce different results. The evidence was that a separate testing at this time would lead to the same result, i.e. the trunk blood would be

consistent with the victim's blood and not with appellant's, although the blood could not be matched with the victim's to the same statistical probability. The results of the testing were admissible. See *Partain v. State,* 238 Ga. 207 (232 SE2d 46) (1977).

*Judgment affirmed in part; reversed in part, and case remanded with direction. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 12, 1982.

*Garland, Nuckolls & Catts, Edward T. M. Garland, John R. Hesmer, Long, Denton & Spencer, Allen D. Denton,* for appellant.
*James E. Hardy, Assistant District Attorney, Michael J. Bowers, Attorney General, Michael S. Bradley,* for appellee.